**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:15-CV-00158-LLK**

**TIMOTHY BRYAN CONNOR**                                                                         **PLAINTIFF**

**v.**

**CAROLYN COLVIN, Commissioner of Social Security**                                    **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets 17 and 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. Docket 13. The case is ripe for determination.

The administrative law judge (ALJ) found that Plaintiff has the residual physical capacity (RFC) to return to his past relevant work, which was sedentary. Because this finding is supported by substantial evidence in the administrative record, the Court will AFFIRM the Commissioner's final decision.

### Background facts and procedural history

Plaintiff was born in 1966. He suffers from obesity and degenerative joint and disc disease. In 2011, he last worked as an insurance/benefits clerk, a sedentary position. He was laid off due to work slowdown and applied for Title II benefits. He is insured for benefits through December 2016.

In September 2013, neurosurgeon Amr El-Naggar performed an anterior cervical discectomy and fusion (ACDF) due to "significant C5-6 disc prolapse that is flattening the cord." Administrative Record (AR), p. 491. According to Dr. El-Naggar, Plaintiff did "very well" after surgery and began "to resume his daily activities." AR, p. 493.

In his June 2014 decision, the ALJ found Plaintiff has an RFC to, among other things, "perform sedentary work … with no sitting or standing longer than 30 minutes continuously."  AR, p. 18.  To perform the full range of sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  Social Security Ruling (SSR) 83-10, 1983 WL 31251.  Therefore, the ALJ implicitly found that Plaintiff can alternate sitting and standing/walking, sustaining each activing  for no longer than 30 minutes at a time, for a total of 6 hours of sitting and 2 hours of standing/walking per 8-hour workday.

The ALJ found that the above RFC permitted Plaintiff to return to his past relevant work as insurance clerk (as he actually performed it and as it is generally performed in the national economy); therefore, he is not disabled.

Plaintiff presents 2 contentions:  1) "The [ALJ] erred in failing to give controlling weight to the opinion of Mr. Connor's treating physicians," Amr El-Naggar and Tammy Brown.  2) "The ALJ erred by not considering the actual impact of claimant's myelomalacia in determining [his] RFC."  Fact and law summary, Docket 17, pp. 5-7 and 8-11.

**The ALJ was not obliged to give controlling weight
To Dr. El-Naggar's pre-surgical opinion that Plaintiff is "disabled."**

In July 2013, prior to the September 2013 ACDF surgery to correct "disc prolapse that is flattening the cord" (AR, p. 491), Dr. El-Naggar opined:  "Due to the presence of significant spinal cord compression, I believe the patient should be considered totally and permanently disabled.  He has evidence of myelomalacia of the spinal cord."  AR, p. 459.

"Myelomalacia is the softening of the spinal cord."  Smith v. Commissioner, 2012 WL 961216 n.1 (S.D.Ohio).

The ALJ found that:  "Dr. El-Naggar's generalized opinion that claimant was disabled is given no weight since the opinion on this ultimate issue is reserved to the Commissioner."  ALJ's decision, AR, p. 23.

The ALJ declined to give any special significance to Dr. El-Naggar's opinion that Plaintiff is "disabled," and this comported with 20 C.F.R. 404.1527(d), which provides:

(d)(1). *Opinions that you are disabled.*  We are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.
(d)(2) …
(d)(3).  We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraph[] (d)(1).

The ALJ was not obliged to give controlling weight to Dr. El-Naggar's pre-surgical opinion that Plaintiff is disabled.

**The ALJ was not obliged to give controlling weight to Dr. Brown's findings,
Which would not allow him to stand/walk and sit sufficiently to perform sedentary work.**

In February 2014, Dr. Brown completed (at Plaintiff's request) the Medical Assessment of Ability to Do Work-Related Activities (Physical) form.  Among other things, Dr. Brown found that:

1. Plaintiff can stand/walk without interruption for 10 minutes, for a total of 30 minutes per 8-hour workday, because:  "Cervical MRI prior to surgery shows C5/C6 disc bulge, chord compression. [Patient] continues to have osteoarthritis in both knees.  Lumbar MRI 12/2012 shows disc bulges L3/L4 and L4/L5 with high grade neuroforaminal narrowing/compression at L5."  AR, p. 488.

2.  Plaintiff can sit without interruption for 30 minutes, for a total of 3 hours per 8-hour workday, because:  "[Patient] has low back and neck pain.  His cervical MRI shows cord compression and lumbar MRI shows high grade bilat[eral] neuroforaminal stenosis."  Id.

3. In April 2014, in Dr. Brown added (in a To Whom It May Concern letter):  "MRI findings of Mr. Conner's (sic.) knees confirmed degenerative arthritis bilaterally….  The patient has difficulty getting up from a sitting position [and] walking distances over one block….  Although frequent change in position is

recommended to avoid stiffness, he cannot walk for extended periods due to increased swelling without activity." AR, p. 521.[1]

Because Dr. Brown was a treating physician, the ALJ was obliged to give her medical opinions controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2).

The ALJ found that: "Considering the sporadic nature of these encounters [with Dr. Brown], the paucity of medical findings, the mild nature of lumbar MRI findings and her own advice that claimant walk 30-45 minutes three times per week, I would not be inclined to accept an opinion that Mr. Conner (sic.) would be incapable of sitting, standing and walking a combined total of only three and one-half hours per day; therefore, little weight is accorded her opinion." AR, p. 23. More specifically, the ALJ declined to give Dr. Brown's findings controlling weight because:

1. Dr. Brown's treatment notes do not reflect significant mobility issues or complaints, and there is no indication Plaintiff was prescribed or used an ambulatory aid, neck or back brace, or epidural injections for neck or back pain. AR, pp. 22-23.

2. Dr. Brown recommended conservative treatment such as nerve stimulation and physical therapy.

2. In December 2012, Dr. Brown advised Plaintiff to walk 30-45 minutes 2 to 3 times a week. AR, p. 23 referring to AR, p. 430.

3. There was a hiatus in treatment between December 2012 and January 2014 (just 1 month before Dr. Brown issued her disabling findings in February 2014), when Plaintiff complained of hearing problems (ear fullness in the left ear). AR, p. 23 referring to AR, pp. 428 and 510-511.

---

[1] The major discrepancies between Dr. Brown's findings and the ALJ's RFC finding appear to be that:
1. While Dr. Brown opined that Plaintiff can stand/walk without interruption for 10 minutes, the ALJ found 30 minutes. Dr. Brown found that he can stand/walk a total of 30 minutes, and the ALJ implicitly found 2 hours.
2. While Dr. Brown opined that Plaintiff can sit a total of 3 hours, the ALJ implicitly found 6 hours.

4

4. The "lumbar MRI yield[ed] mild lumbar bulges and stenosis." AR, p. 23 referring to AR, pp. 440-441.

5. Although the state-agency opined that Plaintiff can perform light work, the ALJ found that Plaintiff "is limited to sedentary exertion accommodating a sit/stand option due to recent knee MRI findings received after hearing." AR, p. 23 referring to AR, pp. 495-496.

The ALJ identified substantial reasons for declining to give controlling weight to Dr. Brown's findings, which would preclude sedentary (including Plaintiff's past relevant) work.[2]

Plaintiff's contention that the ALJ erred in failing to give controlling weight to the opinions of Drs. El-Naggar and Brown is unpersuasive.

**The ALJ's decision adequately evaluated the limiting effects of Plaintiff's myelomalacia.**

Plaintiff's second contention is that: "The ALJ erred by not considering the actual impact of claimant's myelomalacia in determining [his] RFC" and did not "address [his] myelomalacia at all in his opinion." Fact and law summary, Docket 17, p. 8.

In July 2013 (pre-surgery), Dr. El-Naggar noted that Plaintiff's "EMG/NCV is suggestive of demyelinating disease, so I ordered a MRI of the brain as well." AR, p. 458. Plaintiff "has evidence of myelomalacia of the spinal cord." AR, p. 459.

The ALJ recognized that Plaintiff suffers "severe," or vocationally-significant, degenerative disc and joint disease. AR, p. 16. The ALJ found that: "Mr. Conner (sic.) has been supplied with splits for carpal tunnel syndrome based on an EMG which was positive for diffuse demyelinating disease. Based

---

[2] Regarding the foregoing reasons the ALJ gave for declining to give controlling weight to Dr. Brown's findings, the Commissioner observes that: "Plaintiff insists that 'absolutely no evidence in the record' contradicts Dr. Brown's findings. … Plaintiff ignores [these] good and specific reasons the ALJ provided for giving little weight to Dr. Brown's opinion of extreme standing and sitting limitations." Fact and law summary, Docket 20, pp. 4-5.

on the record as detailed below, I find these conditions [i.e., degenerative disc /joint disease and demyelinating disease] to be 'severe,' resulting in more than minimal work-related limitations." Id.[3]

Plaintiff's argument that the ALJ failed to evaluate the limiting effects of his myelomalacia is unpersuasive because:

1. As indicated above, the ALJ recognized that Plaintiff suffers from severe "demyelinating disease." AR, p. 16. It is not self-evidence (to non-medical experts such as Plaintiff and this Court) what, if anything, is the difference between demyelinating disease and myelomalacia and, if there is a significant difference, the relationship, if any, between impairments. Plaintiff's argument calls for medical speculation.

2. The record fails to support a conclusion that Plaintiff suffers from myelomalacia (as a separate and distinct impairment). Dr. El-Naggar did not diagnose myelomalacia. He did not attribute Plaintiff's being "disabled" to myelomalacia, but rather to spinal cord compression. AR, p. 459. He stated that there was "evidence of myelomalacia of the spinal cord." AR, p. 459. He ordered a brain MRI due to this evidence. Plaintiff, however, points to no subsequent MRI results or medical opinion confirming the <u>presence</u> of myelomalacia.

3. Even if myelomalacia is a separate impairment that he actually suffers, Plaintiff has not shown that the impairment results in vocationally-significant limitations in addition to those contemplated by the ALJ's RFC finding. See Maziarz v. Secretary, 837 F.2d 240, 244 (6th Cir.1987) (If the ALJ considers the limiting effects of all severe and non-severe impairments as a whole, the ALJ's not including a specific impairment in the list of severe impairments "does not constitute reversible error") and McGlothin v. Commissioner, 299 Fed.Appx. 516, 522 (6th Cir.2008) (It is "legally irrelevant" that the ALJ found an impairment to be non-severe because he acknowledged other severe impairments and completed the evaluation process).

---

[3] In weighing the evidence, the ALJ recognized that Dr. El-Naggar found that the EMG was "suggestive of demyelinating disease." AR, p. 20.

**Order**

Because the ALJ's decision is supported by substantial evidence and accords with applicable legal standards, the final decision of the Commissioner is hereby AFFIRMED and Plaintiff's complaint is DISMISSED.